## MIX v. STAPLES.

*(Supreme Court, General Term, First Department.* February 18, 1892.)

1. EXPERT TESTIMONY—READING FROM PUBLISHED TREATISE.
    An expert cannot read from his own published works to support his testimony, and the reading of such extracts is especially improper when the witness does not testify as to their truth. O'BRIEN, J., dissenting.

2. PROOF OF DAMAGE FROM BREACH OF WARRANTY.
    In an action for breach of a warranty that a mare was as sound as the day she was foaled, except a blemish on one knee, one witness testified that she was worth $500, but was unable to tell her value until he had driven her, which he had not. Another testified that he did not trade in horses, but had bought and sold them; that $1,000 was a good, big price, if she was sound; that he did not examine her closely, but judged she was worth between $300 and $500; and a third, with a similar experience, that if sound she would be worth $2,500 to $3,000, but, being unsound, was worth only $300. Plaintiff, who had no knowledge of horses, testified that, if sound, the mare would be worth $2,000. *Held*, that the evidence was insufficient as to the measure of damages to sustain a verdict for plaintiff.

Appeal from circuit court, New York county.

Action by Homer D. Mix against Orrin G. Staples for breach of warranty. Defendant appeals from a judgment for plaintiff entered upon a verdict, and from an order denying a motion for a new trial. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ.

*Vanderpoel, Cuming & Goodwin,* (*Delos McCurdy,* of counsel,) for appellant. *E. R. Thompson, Jr.,* (*Edw. Browne,* of counsel,) for respondent.

PATTERSON, J. This is an action for the breach of warranty of a horse, the allegations of the complaint being that at the time of the sale a warranty was given by the defendant that such horse was sound and true, and but 8 years old, and the breach assigned being that it was unsound and diseased, and utterly worthless, and, instead of being 8 years old, was 10 years of age. The defense was, in effect, a general denial. On the trial the warranty, in writing, was put in evidence, and is in these words: "H. D. Mix bought of O. G. Staples the mare Ninette, which is sound and kind in every way, with the exception of a slight blemish on one knee. She is sound as the day she was foaled, and has no tricks or bad habits I know of. Price $2,000."

Testimony was introduced at the trial to show the condition of the animal a few days after the sale, and a veterinary surgeon (Liautard) was called to testify as to the results of his examination of what we will assume to have been the horse in question. He testified that the animal had navicular disease, which is an affection of one of the bones of the foot; that it is an incurable disease, and that it had existed for weeks or months prior to the 8th day of May, when he made the examination. He was then asked whether he had not written a treatise on that subject, and he replied that he had,—that he had made a special report of the diseases of horses, which was published by the bureau of animal industry in the department of agriculture of the United

States government, and that book contained a letter of his on navicular disease; and he was referred to page 395 of that book, and was allowed to read a long extract from it. His doing so was objected to, and an exception duly taken. We think it was error to allow this witness to read from his own published works to support his own testimony, just as it would have been to allow him to read from any other author, even if approved and accepted authority. What he had written abstractly could not be made testimony. He was called to swear to facts, and not to the correctness of what he may have written generally, years before, on a particular topic. In testifying as to this disease the witness was speaking as an expert. He would not have been allowed to testify to statements made in books of other authors,—*In re Mason*, (Sup.) 14 N. Y. Supp. 434, and cases there cited,—and should not have been allowed to read from his own publications for the same reason, for it does not appear even that he testified that the extracts he read from his own treatise were true, and "the little points of difference" as to symptons, the witness admitted, "may be of importance."

But, even if this objection may be overcome, the proof was entirely insufficient on the measure of damages, and there was no fair basis laid in the testimony by which the jury could ascertain what sum should be awarded. Irrespective of the plaintiff himself, three witnesses were called on that subject. One of them (Ferguson) did not know anything about the horse, and said he could not tell its value without driving it, and he did not drive it, and that he could not tell its value as a sound horse; but he was allowed, under exception, to say that she was worth $500. Another witness was Wheeler, who did not trade in horses, but had bought and sold them, and had some knowledge of the asserted pedigree of this animal. He swore that $1,000 would have been "a good, big price" for her, if she were sound, and that she was worth, as he saw her, between $300 and $500; but he did not examine her closely. This witness, clearly, was not competent to testify as to her condition or value. Another witness, Mr. Lewis, was a stock-broker. He had bought and sold horses, and saw this mare, and said that she was lame, and located the lameness in the left fore-leg, and then went on to testify, under objection, that if she were sound she would have been worth from $2,500 to $3,000, but, being unsound, she was only worth $300. All these witnesses were allowed to testify on the assumption that the horse was absolutely sound, and without regard to the fact that, by the very terms of the warranty, she was not sound unless it be that she was as sound as the day she was foaled, except a blemish on one knee. They do not testify as to what that blemish was, or how it affected her value from the day she was foaled, or at any time, and they did not have sufficient knowledge to enable them to speak as to her real value. The only other testimony as to value was that of the plaintiff himself. He swore distinctly that he knew very little about horses, and was not in any way shown to be competent to speak of the value of this animal, and yet he was allowed to say that if she were sound she would have been worth $2,000. The evidence was altogether insufficient to support the verdict, and the judgment should be reversed and a new trial ordered, with costs to abide the event.

VAN BRUNT, P. J. Dr. Liautard's effusion was entirely inadmissible, and there was no proof of damage. I therefore concur.

O'BRIEN, J. I think a distinction is to be made between reading by an expert from a work of his own and a work by some other author. In one case he is expressing his opinion, which has been reduced to writing or printed; in the other, he is supporting his views by what others may have written on the subject, which latter is clearly incompetent and improper. Upon the incompetent evidence as to value, the judgment should be reversed.